ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN 109740
Michael A. Klitzke, SBN 299765
Teigan N. Stones, SBN 299692
10085 Carroll Canyon Road, Suite 100
San Diego, California 92131
Telephone: (858) 348-1005
Facsimile:  (858) 348-1150
*hal@rbblawgroup.com*
*michael@rbblawgroup.com*
*teigan@rbblawgroup.com*

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE FORNARIO, an individual; and JENNIFER WHITE, an individual, | Case No.  '17 CV 2329 H    NLS |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1.  VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE § 1790 ET SEQ. |
| FORD MOTOR COMPANY, a Delaware corporation; FELDMAN URI, an individual *dba* KEARNY PEARSON FORD; and DOES 1 through 75, inclusive, | 2.  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT |
| Defendants. | 3.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT |

Plaintiffs, SUZANNE FORNARIO and JENNIFER WHITE, hereby allege the following against Defendants FORD MOTOR COMPANY and FELDMAN URI *dba* KEARNY PEARSON FORD on information and belief, formed after a reasonable inquiry under the circumstances:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the action alleges claims pursuant to 15 U.S.C. § 2310, the Magnuson Moss Warranty Act.  Plaintiffs are natural persons with a claim that exceeds the amount in controversy of $50,000, pursuant to 15 U.S.C. § 2310(d)(3)(B).

2.     This Court has supplemental jurisdiction over the California state law claims, pursuant to 28 U.S.C. § 1367.  Venue is appropriate in this judicial district because the Defendants are individuals, associations, or corporations that are either authorized to conduct or, in fact, do conduct substantial business in the State of California, County of San Diego.

## **GENERAL ALLEGATIONS**

3.     Plaintiffs, are individuals who, at the time of the transaction at issue resided in the City of San Diego, County of San Diego, State of California.

4.     Plaintiff, Suzanne Fornario purchased the vehicle that is the subject matter of this lawsuit for her daughter Plaintiff, Jennifer White.

5.     All interest in the vehicle that is the subject matter of this lawsuit has been assigned to Plaintiff, Jennifer White, including the right to pursue this lawsuit.

6.     Defendant, Ford Motor Company ("Ford") is a Delaware corporation doing business through its dealership and agent Feldman Uri, *dba* Kearny Pearson Ford ("KPF"), in the City of San Diego, County of San Diego, State of California.

7.     Defendant, KPF, is or was, a car dealership registered to do business in California, and doing business in the City of San Diego, County of San Diego, State of California.

8.     Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus name them under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiffs and/or they are the alter-ego of the Defendants named herein. Plaintiffs will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

9.     All acts of corporate employees, as alleged, were authorized or ratified by an officer, director, or managing agent of the corporate employer.

COMPLAINT

10.    Each Defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), co-conspirator, or employee of each other Defendant and in acting as such principal or within the course and scope of such employment, agency, or conspiracy, took some part in the acts and omissions, hereinafter set forth, by reason of which each Defendant is liable to Plaintiffs for the relief prayed for herein.

## SUMMARY OF FACTS

11.    Defendants' conduct in this case is unconscionable and must be stopped.

12.    Ford and KPF actively advertise that vehicles designated as Ford Certified Pre-Owned have passed a "stringent" 172-point inspection by "Factory-trained technicians." "[A]ny component that does not meet program standards" is replaced with new Ford parts. "You'll definitely know your history when you purchase a Ford Certified Pre-Owned vehicle."

13.    Ford and KPF give the impression that Ford Certified Pre-Owned Vehicles are in "like new" condition with no mechanical defects.

14.    On November 5, 2016, Plaintiffs purchased a 2015 Ford Fiesta Certified Pre-Owned, VIN: 3FADP4EJXFM164308 ("Vehicle"), from KPF.

15.    The Vehicle comes with Ford's express 3 year / 36,000 mile Basic warranty and a 5 year / 60,000 mile Powertrain warranty.

16.    As a Ford Certified Pre-Owned Vehicle, the Vehicle also came with an express 1 year / 12,000 mile Comprehensive warranty (starting at the time of sale to Plaintiff) and a 7 year / 100,000 mile Powertrain warranty.

17.    Allegedly, in order to be certified, a ford dealer must perform a 172-point inspection of the vehicle; register the vehicle, with CarFax, as a Ford Certified Pre-Owned Vehicle; and pay Ford to enroll the vehicle in the Certified Pre-Owned Warranty Program (the Comprehensive warranty). Ford reviews the inspection report and a CarFax report before approving the certification. Both Ford and the dealer advertise the vehicle for sale on their websites as a Ford Certified Pre-Owned Vehicle.

COMPLAINT

18.    The express Certified Pre-Owned warranties for the Vehicle are issued by both Ford and KPF.

19.    The express warranties cover any defect in the Vehicle's design. *See* Ford Warranty Manual, page 9; *also Daniel v. Ford Motor Company*, 806 F.3d 1217, 1224-25 (9th Cir. 2015).

20.    Ford and KPF knew the history of the Vehicle at the time it was certified.

21.    KPF failed to provide Plaintiff with the Certified Pre-Owned Inspection Checklist.

22.    Vehicle Code § 11713.18 requires the seller of a "certified" vehicle to "provide the buyer with a completed inspection report indicating all the components inspected."

23.    Shortly after purchasing the Vehicle, Plaintiffs noticed transmission shuddering. Plaintiffs asked KPF about the problem. The salesperson stated that it was normal and nothing to worry about.

24.    On December 6, 2016, Plaintiffs took the Vehicle to KPF because the Vehicle shuddered at take off and when accelerating. KPF verified the concern. Ford and/or KPF informed Plaintiffs the Vehicle was working as designed.

25.    Plaintiff, believing the salesperson's representation that the shuddering was normal, and not a defect, did not discover there was something seriously wrong with the Vehicle's transmission until August 2017.

26.    On August 31, 2017, Plaintiff took the Vehicle to KPF who confirmed that the Transmission Control Module was defective and needed to be replaced. After replacing the component, KPF reprogramed the Transmission Control Module.

27.    Plaintiff continues to experience problems with the Vehicle's transmission, including shuddering, jerking, and now the Vehicle is stalling.

28.    On November 9, 2017, the Vehicle was towed to KPF for repairs and is currently at KPF.

///

4

COMPLAINT

29.    On information and belief, the Vehicle's transmission has been repaired multiple times prior to Plaintiffs' purchase.

30.    The Vehicle was equipped with a Dual PowerShift 6 Speed Transmission ("DPS6").

31.    The DPS6 transmission is a known defective transmission.

32.    Ford has used the DPS6 transmission in the 2011-2018 Ford Fiesta and 2012-2018 Ford Focus.

33.    The DPS6 transmission is notorious for causing hesitation upon acceleration, jerking, and shuddering while driving.

34.    Plaintiffs are informed and believe that Ford has attempted to cover up the known design defects in the DPS6 by publishing a document attempting to redefine what it considered to be normal operating characteristics.

35.    Ford has attempted to implement various repair protocols, procedures, and updates in order to conform the DPS6 to its warranty.  These include the following:

    a.    <u>Field Service Actions</u>:  FSA 11B31; FSA 11T02; FSA 12B37; FSA14M01; FSA14M02; and FSA15B22

    b.    <u>Special Service Messages</u>:  SSM 44852; SSM 44828; SSM 44785; SSM 44707; SSM 44161; SSM 12053; and SSM 22550

    c.    <u>Technical Service Bulletins</u>:  TSB 14-0047; TSB 14-0047A-E; TSB 14-0131; TSB 14-0197; TSB 15-0083; TSB 15-0043; TSB 15-0017; TSB 14-0066; TSB 12-4-6; TSB 11-12-13; TSB 13-9-4; TSB 15-0043; TSB 15-0090; TSB 15-0120; TSB 15-0121; TSB 13-4-5; and TSB 13-4-5c

36.    The Transmission Control Module and Powertrain Control Module reprogram/flash, clutch replacement, and Transmission Control Module replacement encompass all of Ford's repair procedures for the DPS6 transmission to date.

37.    Plaintiffs are informed and believe that Technical Service Bulletin (TSB) 15-0120 is evidence that Ford cannot repair any vehicle equipped with a DPS6 to the applicable warranty.

COMPLAINT

38.   A TSB is an advisory issued by a vehicle manufacturer when there are several occurrences of an unanticipated problem requiring repair. TSBs can range from vehicle-specific to covering entire product lines and break down the specified repair into a step-by-step process. TSBs are widely circulated among dealership service departments and mechanics to provide an engineering-level description and solution for a problem common to type, year, make, or model of car. A well-managed TSB process can save technicians troubleshooting time, provide organized, itemized repair procedures, and standardize the repair process.

39.   TSB 15-0120 clearly indicates that this Bulletin superseded a previous TSB 15-0090.

40.   In or about August 2015, Ford released its most recent comprehensive effort to conform the DPS6 to its warranty through Customer Satisfaction Program 15B22.

41.   Previous Customer Satisfaction Programs were released in or about August 2014 (14M01) and January 2015 (14M02).  Ford further supplemented each Program.

42.   The fact that Ford had to publish Customer Satisfaction Program 15B22 confirms that the initial Customer Satisfaction Programs were unsuccessful in attempting to conform vehicles equipped with a DPS6 to Ford's warranty.

43.   Considering the number of times Ford has supplemented and updated repair protocols, Plaintiffs are informed and believe that Ford is simply grasping at straws, looking for some solution to remedy an ongoing defect with the DPS6 that Ford installed on the Vehicle.

44.   Plaintiffs are informed and believe that Ford cannot repair the Vehicle.  Any repair performed is nothing more than a stop gap.

45.   On July 7, 2017, Ford sent a Class Action Settlement Notice to owners of vehicles equipped with the DPS6 transmission.

46.   On information and belief, the Class Action Settlement came after many months of settlement negotiations with Ford.

47.   Plaintiffs have opted out of the Class Action Settlement.

6

COMPLAINT

48.　On information and belief, KPF's Service Center has performed "repairs" (physical or software updates/flashes) to DPS6 transmissions more than 10,000 times since it was first released in the 2011 Ford Fiesta.

49.　KPF knows of the defective history of the DPS6 transmission installed in the Vehicle.

50.　KPF knows and has performed repairs in compliance with the Service Actions, Service Messages, and Technical Service Bulletins identified in Paragraph 35.

51.　On information and belief, Ford, through its warranty program, has paid for more than 30,000,000 "repairs" to the DPS6 transmission since it was first released in the 2011 Ford Fiesta.

52.　Plaintiffs are informed and believe that, pursuant to the federal TREAD Act, 49 U.S.C. § 30101, et seq., Ford had a duty to prepare and file a report(s) with the National Highway Safety Administration (NHTSA), and/or other governmental agencies, following Customer Satisfaction Program 15B22, as well as, the other two (2) Customer Satisfaction Programs related to the Dual Power Shift 6 Speed Transmission.

53.　Plaintiffs are informed and believes that Ford is a Group 1 manufacturer under the TREAD Act.

54.　Plaintiffs are informed and believe that as a Group 1 Manufacturer under the TREAD Act, Ford is required to regularly submit reports and statistics to NHTSA.

55.　Plaintiffs are informed and believe that Ford has had an obligation to submit reports to NHTSA following consumer complaints about Ford vehicles equipped with the DPS6.

56.　Plaintiffs are informed and believe that pursuant to 49 USC § 30166(m)(3)(A) Ford has submitted reports to NHTSA involving warranty reports related to Ford vehicles equipped with the DPS6 Transmission.

57.　Plaintiffs are informed and believe that pursuant to 49 USC § 30166(m)(3)(B), Ford has submitted reports to NHTSA involving consumer complaints related to Ford vehicles equipped with the DPS6 Transmission.

58. Plaintiffs are informed and believe that Ford submitted reports to NHTSA concerning Ford vehicles equipped with the DPS6 in accordance with 49 CFR 573.6.

59. Plaintiffs are informed and believe that NHTSA has not deemed any report that Ford has submitted pursuant to 49 CFR 573.6 related to vehicles equipped with the DPS6 to be confidential.

60. Plaintiffs are informed and believe that Ford submitted reports to NHTSA concerning Ford vehicles equipped with the DPS6 in accordance with 49 CFR 579.5(b).

61. Plaintiffs are informed and believe that NHTSA has not deemed any report that Ford has submitted pursuant to 49 CFR 579.5(b) related to vehicles equipped with the DPS6 to be confidential.

62. Plaintiffs are informed and believe that pursuant to the TREAD Act, Ford must report the numbers of consumer complaints they receive that are related to problems with certain specified components and systems that occurred in the United States.

63. Plaintiffs are informed and believe that NHTSA has not deemed any such report that related to vehicles equipped with the DPS6 to be confidential.

64. Plaintiffs are informed and believe that pursuant to the TREAD Act, Ford must report the number of warranty claims (adjustments for tire manufacturers), including extended warranty and good will, they receive that are related to problems with certain specified components and systems that occurred in the United States. Plaintiffs are informed and believe that NHTSA has not deemed any such report that related to vehicles equipped with the DPS6 to be confidential.

65. Plaintiffs are informed and believe that pursuant to the TREAD Act, Ford must report the total number of field reports they receive from the manufacturer's employees, representatives, and dealers, and from fleets, that are related to problems with certain specified components and systems that occurred in the United States. In addition, manufacturers must provide copies of certain field reports received from their employees, representatives, and fleets. Plaintiffs are informed and believe that NHTSA has not

///

COMPLAINT

deemed any such report that related to vehicles equipped with the DPS6 to be confidential.

66.    Plaintiffs informed and believe that pursuant to 49 USC § 30166(m)(3)(a), Ford has submitted reports to NHTSA involving warranty reports related to 2015 Ford Fiesta equipped with the DPS6.  Plaintiffs are further informed and believe that these reports will establish an existence of a defect in design in the Vehicle.

67.    Plaintiffs are informed and believe that pursuant to 49 USC § 30166(m)(3)(B), Ford has submitted reports to NHTSA involving consumer complaints related to 2012 Ford Focuses equipped with the DPS6.  Plaintiffs are further informed and believe that these reports will establish an existence of a defect in design in the Vehicle.

68.    Plaintiffs are informed and believe that Ford knows that it cannot conform vehicles, including the Vehicle, equipped with a DPS6 transmission to its warranty.

69.    Plaintiffs are informed and believe that it is impossible to conform the Vehicle to warranty.

70.    Plaintiffs informed and believe that Ford has developed protocols designed to willfully circumvent and avoid compliance with its statutory duties to "promptly" repurchase vehicles that have not been conformed to its warranty within a reasonable opportunity to repair.

71.    At the time, Plaintiffs filed this Complaint, KPF was advertising 5 Ford Focus vehicles for sale as Ford Certified Pre-Owned Vehicles.

72.    At the time, Plaintiffs filed this Complaint, Ford was advertising 13 Ford Fiesta and 49 Ford Focus vehicles for sale as Ford Certified Pre-Owned Vehicles within 100 miles of this Court.

73.    Plaintiffs have asked KPF to repurchase the Vehicle. KPF rejected the request.

74.    Plaintiffs requested a buy back from Ford.  Ford also rejected their claim.

///

COMPLAINT

**FIRST CAUSE OF ACTION**
**Violation of the Song-Beverly Consumer Warranty Act, Civil Code §1790 et seq.**
**(As to all Defendants)**

75.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 74, inclusive, of this Complaint.

76.    Under the Song-Beverly Consumer Warranty Act ("Song-Beverly") Civil Code § 1790 et seq., the Vehicle constitutes a "consumer good" purchased primarily for family or household purposes and Plaintiff has used the Vehicle primarily for those purposes.

77.    Plaintiff is a "buyer" of consumer goods under Song-Beverly.

78.    Ford is a "manufacturer" and/or "distributor" under Song-Beverly.

79.    KPF is a "Seller" and/or "retailer" under Song-Beverly.

80.    The sale of the Vehicle to Plaintiff was accompanied by express and implied warranties by both Ford and KPF.

81.    KPF is a "manufacturer" for purposes of Song-Beverly because it provided an express warranty for the Vehicle.

82.    The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value, and/or safety of the Vehicle.

83.    Plaintiffs delivered the Vehicle to KPF and Ford's authorized repair facilities for repair of the nonconformities.

84.    Ford and KPF were unable to conform the Vehicle's transmission to the applicable express warranties.

85.    The implied warranty of merchantability has been breached in that, among other matters: (1) the Vehicle would not pass without objection in the trade because it is incapable of safe operation for use on the roads or highways and was sold with serious defects, including, but not limited to, a faulty transmission and malfunctioning door latch; and, (2) is unfit for the ordinary purpose for which such vehicles are intended to operate and function.

COMPLAINT

86.    Plaintiffs are entitled to revoke, and justifiably revoke, acceptance of the Vehicle under Song-Beverly.

87.    Plaintiffs are entitled to and seek damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from Ford's failure to comply with its obligations under Song-Beverly.

88.    Plaintiffs are entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

89.    Ford and KPF willfully violated Song-Beverly. As a result, Plaintiffs are entitled to a civil penalty up to two times actual damages.

### SECOND CAUSE OF ACTION
### Violation of Magnuson Moss Warranty Act
### (As to all Defendants)

90.    Plaintiffs incorporate herein each and every allegation set forth in paragraphs 1 through 89 of this Complaint, as though fully set forth herein.

91.    Plaintiffs are "consumers" as defined in Magnuson-Moss Warranty Act (hereinafter "Mag-Moss"), 15 U.S.C. § 2301(3).

92.    Ford is a "supplier" and "warrantor" as defined in Mag-Moss, 15 U.S.C. § 2310(4) and (5).

93.    KPF is a "supplier" and "warrantor" as defined in Mag-Moss, 15 U.S.C. § 2310(4) and (5).

94.    The Vehicle is a "consumer product" as defined in Mag-Moss, 15 U.S.C. § 2301(1).

95.    Ford and KPF provided Plaintiffs with a "written warranty," as defined in Mag-Moss, 15 U.S.C. § 2301(6).

96.    Under California law an "implied warranty of merchantability" was created in connection with sale of the Vehicle, as defined in Mag-Moss, 15 U.S.C. § 2301(7).

97.    Ford's and KPF's failure to provide Plaintiffs with the Vehicle substantially free of defects, as warranted, constitutes breach of the express and implied warranties

11

1    covering the Vehicle, and hence violation of Mag-Moss.

2        98.    Plaintiffs have provided Ford and KPF with an opportunity to cure.

3        99.    Plaintiffs have complied with all of the obligations, as agreed to and required

4    under the contract, except as may have been excused or prevented by Ford and/or KPF.

5        100.   Plaintiffs are informed and believe that Ford and KPF are unable to conform

6    the Vehicle to the applicable warranties, after having provided Ford and KPF a reasonable

7    opportunity to cure the defects.

8        101.   For this reason, Ford's and KPF's warranty is deceptive under Mag-Moss.

9    See 15 U.S.C. § 2310(C)(2):

10           For the purposes of this subsection, the term "deceptive warranty"
11           means (A) a written warranty which (i) contains an affirmation,
             promise, description, or representation which is either false or
12           fraudulent, or which, in light of all of the circumstances, would
             mislead a reasonable individual exercising due care; or (ii) fails to
13           contain information which is necessary in light of all of the
14           circumstances, to make the warranty not misleading to a
             reasonable individual exercising due care; or (B) a written
15           warranty created by the use of such terms as "guaranty" or
16           "warranty", if the terms and conditions of such warranty so limit
             its scope and application as to deceive a reasonable individual.
17

18       102.   As a direct and proximate result of the act and omissions of the Defendants,

19   Plaintiffs have been damaged in an amount which will be shown according to proof at

20   the time of trial.

21       103.   Further, under Mag-Moss, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to

22   recover as part of the judgment, costs and expenses of the suit, including reasonable

23   attorneys' fees.  Plaintiffs have incurred and continue to incur legal fees and costs and

24   expenses in connection with the commencement and prosecution of this action.

25                              **THIRD CAUSE OF ACTION**
                          **Violation of the Consumers Legal Remedies Act**
26                                    **(As to all Defendants)**

27       104.   Plaintiffs incorporate herein each and every allegation set forth in

28   paragraphs 1 through 103 of this Complaint, as though fully set forth herein.

105.   The Vehicle constitutes "goods" bought primarily for personal, family or household purposes pursuant to California Civil Code § 1761(a)

106.   KPF is a "person" pursuant to California Civil Code § 1761(c).

107.   Ford is a "person" pursuant to California Civil Code § 1761(c).

108.   The advertisement and sale of the subject vehicle to Plaintiffs is a "transaction" pursuant to California Civil Code § 1761(e).

109.   Pursuant to the Consumers Legal Remedies Act ("CLRA"), the following unfair methods of competition and unfair or deceptive acts or practices are prohibited: (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) Misrepresenting the affiliation, connection, or association with, or certification by, another; (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have; (7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;  and (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

110.   SFL violated the CLRA by: (1) Advertising the Vehicle as a Ford Certified Pre-Owned when that Vehicle would not pass the Ford Certified Pre-Owned certification requirements; (2) Selling the Vehicle as a Ford Certified Pre-Owned when that Vehicle would not pass the Ford Certified Pre-Owned certification requirements; (3) Violating Vehicle Code §11713.18; (4) Misrepresenting the condition of the Vehicle at the time of sale; and (5) Failing to disclose known defects.

111.   Ford violated the CLRA by: (1) Allowing the Vehicle to be sold as a Ford Certified Pre-Owned when the Vehicle would not pass the Ford Certified Pre-Owned certification requirements; (2) Failing to supervise KPF's implementation of the Ford Certified Pre-Owned program; (3) Advertising the Vehicle as a Ford Certified Pre-Owned

when the Vehicle would not pass the Ford Certified Pre-Owned certification requirements; (4) Inducing consumers into believing they are purchasing a high-quality vehicle based on its Ford Certified Pre-Owned designation; and (5) Allowing dealers to sell vehicles with a DPS6 transmission as Ford Certified Pre-Owned.

112. Prior to filing this Complaint, Plaintiffs mailed to Defendants, via certified and regular mail, a copy of the lawsuit, which seeks injunctive relief only under the CLRA and gives notice of violations of the CLRA. No monetary damages are sought under the CLRA at this time.

113. The CLRA provides that a complaint for violations may be amended without leave of court should the violations not be remedies within 30 days. Plaintiffs will amend this Complaint to add a claim for damages, rescission, and restitution under the CLRA should the violations complained of herein not be remedied within the requisite time frame. In addition to actual, statutory, general, incidental, and consequential damages, Plaintiffs will seek punitive damages from Defendants for their malicious, oppressive, and fraudulent acts against Plaintiffs.

114. Civil Code §1780(a)(2) of the CLRA provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the CLRA. Plaintiffs seek an order enjoining KPF and Ford from certifying, advertising as certified, and selling as certified, vehicle's equipped with the DPS6 transmission.

115. Pursuant to California Civil Code § 1780(e), Plaintiffs may also recover attorneys' fees and costs according to proof at time of trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For damages according to proof at trial, except under the CLRA;

2. For restitution and rescission of the purchase contract, except under the CLRA;

3. For incidental and consequential damages according to proof at trial, except under the CLRA;

///

COMPLAINT

4.    For punitive damages and penalties where available, except under the CLRA;

5.    For pre-judgment interest at the legal rate;

6.    For reasonable attorneys' fees and costs of suit as permitted by law (including, but not limited to, 15 U.S.C. § 2310 and Civil Code § 1794(d)); and

7.    For such other and further relief as the Court deems just and proper under the circumstances.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury.

Dated: November 16, 2017                    ROSNER, BARRY & BABBITT, LLP


By:    /s/ Teigan N. Stones
       Hallen D. Rosner
       Michael A. Klitzke
       Teigan N. Stones
       Attorneys for Plaintiffs

COMPLAINT